**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY JANE BERRY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:14-1262** |
| v. | : | **(MANNION, D.J.)** |
| **THE OHIO CASUALTY INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**MEMORANDUM**

Presently before the court is a discovery dispute between the parties over portions of the notes in the claim file which plaintiff sought and defendants asserted were protected from disclosure by a privilege. Following a telephonic conference, the court issued an order on March 24, 2015, and directed the parties to file briefs addressing the privilege issues. Defendants were also directed to supply the court with a redacted and an unredacted copy of the disputed material for *in camera* review, along with a statement noting the privilege asserted for each redacted entry. The parties were also permitted to file reply briefs. (Doc. 22). The parties filed their briefs and defendants submitted, *in camera,* copies of the disputed materials. (Docs. 23, 24, 25, 26).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case aries from a car accident on December 13, 2009, where the

plaintiff Mary Jane Berry's car was hit head-on by another motor vehicle operated by Katrina Collarini and she sustained injuries. The plaintiff settled for the $100,000 policy limits with tortfeasor Collarini's insurance carrier on October 23, 2012.

The plaintiff was also covered by her own insurance policy issued by the defendants. The policy had underinsured motorists ("UIM") coverage of $50,000 stacked per covered vehicle for a total of $100,000 per accident. While the plaintiff's first-party claim with Collarini's insurance carrier was pending, she made an UIM claim with the defendants in February or March of 2011 because she believed her damages exceeded Collarini's policy limits. After about two-and-one-half years, i.e., the end of September of 2013, defendants' claim handler Donna MacLafferty extended an offer to plaintiff for the full policy limits of $100,000.00. The offer was accepted and the plaintiff's UIM claim was settled.

On June 5, 2014, after her UIM claim was resolved for the policy limits, the plaintiff instituted an insurance bad faith claim under 42 Pa.C.S. §8371, against her insurance companies, The Ohio Casualty Insurance Company a/k/a Ohio Casualty, Peerless Indemnity Insurance, Peerless Insurance, Liberty Mutual Group a/k/a Liberty Mutual Insurance, Safeco Insurance a/k/a Safeco Insurance Company of America (collectively "defendants"). The plaintiff alleges that defendant insurance companies acted in bad faith, *inter alia*, by: failing to conduct a prompt and through investigation of the UIM

claim; requesting medical records and medical authorization on numerous occasions despite having been already provided these records; lying about plaintiff's pre-existing condition; making unreasonable "low-ball" offers; increasing offers without value-changing events; misleading or misrepresenting the amount of UIM benefits available; sending a release for the "policy limits" when the release was for a sum that was less than the actual policy limits; retracting a "policy limits" offer; attempting to leverage a potential bad faith claim as part of the UIM claim; and attempting to get plaintiff to release defendant insurance companies from a bad faith claim as part of the settlement of the UIM claim. The plaintiff also asserted breach of contract, breach of the covenant of good faith and fair dealing, negligence, and vicarious liability claims against defendant insurance companies.

The plaintiff initially filed her five-count complaint in the Court of Common Pleas for Lackawanna County. (Doc. 1-1). The defendants removed the case to this court on June 30, 2014, (Doc. 1), and filed an answer on July 21, 2014, with affirmative defenses. The defendants assert that plaintiff's UIM claim was properly and reasonably handled and evaluated based upon the information that was available to the claims professional handling the file. The discovery dispute regarding questions of privilege is now ripe for the court's ruling.

## II.     DISCUSSION

The court has reviewed the redacted material submitted by the defendants *in camera*. The plaintiff requested a copy of defendants' entire UIM claim file, claim notes, and claim diary. The defendants state that the evaluations of plaintiff's UIM claim and the basis for them are contained in the Bodily Injury Evaluation ("BIE") worksheets as well as in other information contained in the claim file. The defendants represent that all of these materials compiled up to June 23, 2013, were produced to plaintiff. In particular, defendants indicate that they produced more than 2700 pages of documents from the claim file and redacted information from only about 15 pages of that file. Defendants contend that these redactions were proper since they were protected by the attorney-client privilege as well as attorney work product protection and did not have to be produced. Defendants maintain that just before MacLafferty extended an offer to plaintiff to settle for the full policy limits of $100,000, they reasonably anticipated litigation on June 23, 2013, and that communications following that date fell within Fed.R.Civ.P. 26(b)(3) as materials prepared in anticipation of litigation. Specifically, the defendants state that all of the redactions that they made relate to activities on dates after June 23, 2013, and that the redacted materials contain the mental impressions, litigation strategy, conclusions, opinions and legal theories of their attorneys or their representatives concerning the litigation. As such, the defendants maintain that following the

4

stated date the redacted information is not discoverable pursuant to F.R.C.P. 26(b)(3). The plaintiff counters that since the defendants' decisions and actions in handling her UIM claim are at issue from the opening of the claim until its resolution, the redacted documents are not protected from disclosure. The plaintiff also states that her bad faith allegations concern defendants' decision-making throughout the entire UIM claim, and that the claim notes must be unredacted and produced up until resolution of the UIM claim, i.e., late September of 2013. Thus, the plaintiff essentially contends that all of the claim notes must be unredacted.

The claim file is a collection of documents along with notes from the adjustors who handled plaintiff's UIM claim. The notes include discussions and offers of settlement, along with determinations of defendants' representatives as to what they believed was a fair value for the plaintiff's injuries. The plaintiff argues that her bad faith claim will require extensive discovery into all of the materials that are in the claim file, that the information is relevant, and that the mental impressions of the claim adjusters during the entire evaluation of her claim, even after arbitration was threatened by both parties, are not privileged. The plaintiff cites to the case of Maiden Creek T.V. Appliance, Inc. v. General Casualty Ins, Co., 2005 WL 1712304 (E.D. Pa. July 21, 2005), to support her contention that the mental impressions of an insurer's non-attorney agents contained in a claim file are at issue in a bad faith case and are discoverable. However, the defendants point out that

*Maiden Creek* recognized that letters in the claim file regarding discussions between the claim handlers and an outside attorney were protected by the attorney-client privilege. Id., at *2.

Initially, it is helpful to frame the plaintiff's burden in establishing the defendants acted in bad faith. There is no dispute that Pennsylvania mandates an insurer act in good faith in negotiating with an injured party. "To succeed on a bad faith claim, a plaintiff must demonstrate by clear and convincing evidence '(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis.'" *Verdetto v. State Farm Fire & Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) *aff'd*, 2013 WL 175175 (3d Cir. Jan. 17, 2013) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)). In simpler terms, the plaintiff must show the defendants failed to make good faith efforts to settle her UIM claim for a reasonable value given her injuries.

Courts have found that institution of a bad faith claim does not automatically waive attorney-client privilege or the work product doctrine. *McCrink v. Peoples Benefit Life Ins. Co.*, 60 Fed.R.Serv.3d 86, *3 (E.D.Pa. 2004). Communications between in-house counsel and claims adjustor are generally privileged. *Quaciari v. Allstate Ins. Co.*, 1997 WL 570921, *1 (E.D.Pa. Sept. 3, 1997). Moreover, only when a defendant affirmatively pleads reliance on counsel's advice is such a privilege waived as to the

communications between the specific counsel and the client. *McCrink v. Peoples Benefit Life Ins. Co.*, 60 Fed.R.Serv.3d 86, *3. The defendants have not pled the advice of counsel as an affirmative defense to the plaintiff's bad faith claim. (Doc. 9, at 27-28).

The law is clear that "documents prepared in the regular course of business rather than for purpose of the litigation are not eligible for work-product protection, even if the prospect of litigation exists." *Sullivan v. Warminster Tp.*, 274 F.R.D. 147, 152 (E.D.Pa. 2011) (citation omitted); *Highland Tank & Mfg. Co. v. PS Intern, Inc.*, 246 F.R.D. 239, 246 (W.D.Pa. 2007) ("the work product doctrine 'only protects documents prepared in anticipation of litigation, not in the regular course of business.'") (citation omitted).

The *Sullivan* Court, 274 F.R.D. at 150, addressed the attorney-client privilege as defined by the Third Circuit and stated:

> The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion of law or (ii) legal services or (iii) assistance in some legal

7

> proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 862 (3d Cir. 1994) (citations omitted). The party claiming that evidence is subject to the attorney-client privilege bears the burden of establishing the privilege. *United States v. Voigt,* 89 F.3d 1050, 1067 n. 6 (3d Cir. 1996). Furthermore, "under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1427 (3d Cir. 1991).

The work-product privilege is codified by Federal Rule of Civil Procedure 26(b)(3), which states that: a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (I) they are otherwise discoverable
under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed.R.Civ.P. 26(b)(3). As with the attorney-client privilege, the party claiming that evidence is protected attorney work product has the burden of establishing that work-product protection applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir. 2000). Unlike the attorney-client privilege, disclosure to a third party only waives the work-product privilege if it permits an adversary to gain access to the information. *See Westinghouse Elec. Corp.,* 951 F.2d at 1428 ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.").

*See also* Mine Safety Appliances Co. v. North River Ins. Co., --- F.Supp.3d

----, 2014 WL 1320150, *17-*18 ( W.D.Pa. March 31, 2014).

The *Sullivan* Court, 274 F.R.D. at 151, also stated:

> [I]t is the communications and not the underlying facts that are privileged. See, e.g., Rhone–Poulenc Rorer, 32 F.3d at 862. Plaintiffs are entitled to discovery regarding the underlying facts of the investigation. It should be further noted, however, that: The protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories. Sampson v. School Dist. of Lancaster, 262 F.R.D. 469, 474 (E.D.Pa. 2008). Such communications are generally protected by the work-product privilege instead. See id.

Additionally, "[t]he question whether a document was prepared in anticipation of litigation is often a difficult factual matter." United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). A document is prepared in anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. (citations omitted). As such, courts should determine "the state of mind of the party preparing the document or ... the party ordering preparation of the document." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993). "This inquiry is limited by the requirement that the party's

anticipation of litigation be objectively reasonable." Sullivan, 274 F.R.D. at 152 (citing Martin v. Bally's Park Place Hotel & Casino, 983 F.2d at 1260).

Based upon the above stated principles, the redacted portions from the claim file will now be discussed.

With respect to the redacted claim notes, after June 23, 2013, the court agrees with defendants that they are all protected from disclosure by the attorney client privilege and the work product doctrine. Since the specific privilege and detailed explanation for the privilege of each redacted line of defendants' claim notes is stated in their counsel's April 10, 2015 letter to the court, this information is not repeated herein. Based on the court's *in camera* line-by-line review of defendants' redacted claim notes, these lines clearly contain notes of conversations with counsel, mental impressions, opinions, conclusions and strategy, as well as communications regarding defense costs as specified in defense counsel's letter.

While plaintiff relies on *Maiden Creek*, that court found that correspondence withheld by the insurance company consisting of letters between an outside attorney and the claims analyst and representative, and emails between the analyst, the claims manager and another representative of the company regarding the status of settlement negotiations were protected by the attorney-client privilege and did not have to be produced.

The court finds, in light of the nature of the notes and the factual situation in the instant case, that the state of mind of the representatives of defendants who prepared the notes in question were anticipating litigation and trial by plaintiff based on an objectively reasonable standard.

Additionally, the redacted notes in the instant case were not simply prepared in the ordinary course of business, but rather for purposes of the litigation. The court's *in camera* review also shows that the lines to which defendants assert the attorney client privilege do in fact contain "information exchanged in order to facilitate the professional relationship between an attorney and his client with regard to ongoing or potential legal proceedings." Highland Tank & Mfg. Co. v. PS Intern, Inc., 246 F.R.D. at 245. The court further finds that several lines of the claim notes contain opinion work product as specified in defense counsel's letter.[1]

---

[1] As the Court noted in *Yeakel v. Werner Enterprises, Inc.,* 2008 WL 2120515, *2 n. 2 (M.D. Pa. 5-19-08):
"Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses." *Sporck,* 759 F.2d 314. Opinion work product is entitled to broader protection than ordinary work product "[s]uch material is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Id.*

Moreover, the last two pages of the bodily injury worksheet of September 15, 2013, which were not produced, pertain to the defendants' valuation of this case as of September 13, their plan for negotiations and their evaluation of the strengths and weaknesses of their positions. These two pages clearly contain mental impressions, opinions, conclusions and strategy prepared in anticipation of litigation. As such, they are not discoverable.

The plaintiff also argues that she has a substantial need for the redacted materials from the claim notes, and that she cannot obtain their equivalent by other means. The plaintiff states that the redactions made by defendants in the claim notes concern material issues and speak to the mental state and decision-making of defendants' agents at a critical time during the negotiations where several acts of bad faith were allegedly committed. The plaintiff contends that she cannot obtain the substantial equivalent of these claim notes through deposition. She also asserts that she would be at a disadvantage taking the depositions of defendants' claim handlers without an unredacted claim file and that she will not be able to assess the credibility of the handlers and their decision-making process. As the *Sullivan* Court, 274 F.R.D. at 152, stated, "[w]ork-product protection is

not absolute, and Plaintiffs can obtain otherwise protected materials if they show that they have 'substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" Fed.R.Civ.P. 26(b)(3)(A)(ii)."

In *Yeakel v. Werner Enterprises, Inc.,* 2008 WL 2120515, *2 (M.D. Pa. 5-19-08), the court stated that "[e]ven when the material sought does constitute 'work product,' the privilege is not absolute." The plaintiff is entitled to work product documents of defendants if she shows that she has a substantial need of the materials to prepare her case and, that she is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Id. (citation omitted). Further, "[a] determination on privilege, then, requires a specific inquiry into the nature of the document in question and the need of the party seeking discovery for access to it. Indeed, 'the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.'" *Id*. (citation omitted).

The plaintiff has not sufficiently shown that she has a substantial need of defendants' redacted claim notes to prepare her case and that the information in defendants' claim notes could not be obtained from any other source. As defendants indicate, plaintiff has not made any attempt to depose the claims professionals who handled her file. The plaintiff should be able to

obtain much of the information in the claim notes from other means, including her own investigations and interviews with witnesses, and the depositions of the claims personnel who handled her UIM claim. Thus, plaintiff has not shown a substantial need for the redacted materials.

### III.   CONCLUSION

Based on the foregoing, the plaintiff's request for all of the materials redacted by defendants is **DENIED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 2, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1262-01.wpd